**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| CHANEL, INC.,<br>a New York corporation,<br><br>    Plaintiff,<br><br> v.<br><br>LIU ZHIXIAN<br>and DOES 1-10,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 10-cv-60585-JIC<br><br>**MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN SUPPORT OF**<br>**PLAINTIFF'S *EX PARTE***<br>**APPLICATION FOR ORDER**<br>**AUTHORIZING ALTERNATE**<br>**SERVICE OF PROCESS ON**<br>**DEFENDANT PURSUANT TO**<br>**FEDERAL RULE OF CIVIL**<br>**PROCEDURE 4(f)(3)** |

Plaintiff, Chanel, Inc., ("Chanel") submits this Memorandum of Points and Authorities in support of its *ex parte* application for an order authorizing alternate service of process on Defendant, brought pursuant to Federal Rule of Civil Procedure 4(f)(3).

## I. INTRODUCTION

Chanel is suing Defendant Liu Zhixian ("Zhixian") for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and cyberpiracy (Count III). As alleged in Chanel's Complaint, Defendant Zhixian and various unknown associates are promoting, advertising, distributing, selling, and offering for sale counterfeit and infringing Chanel branded products within this Judicial District through various fully interactive commercial Internet websites operating under at least the domain names chanel2u.com, chanel4u.com, chanel-belts.com, chanelbikini.com, chanel-rings.com, chanel-sandals.com, chanel-scarf.com, chanelswimwear.com, chaneltalk.com, okchanel.com, and brandshoesbar.com (collectively the "Subject Domain Names"). On April 21, 2010, this Court entered a Temporary Restraining Order disabling the Subject Domain Names.

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Chanel requests an order allowing service of process on Defendant Zhixian via electronic mail ("e-mail").  E-mail service is appropriate and necessary in this case, because Defendant Zhixian (1) operates anonymously via the Internet using false physical address information in the registrations for his Subject Domain Names in order to conceal his location and avoid liability for his unlawful conduct; and (2) relies solely on electronic communications to operate his businesses.  Notwithstanding Defendant Zhixian's concealment of his physical location, Chanel still has the ability to contact Defendant Zhixian directly and provide notice of Chanel's claims against him.  Specifically, two of the contact e-mail addresses Defendant Zhixian provided to his domain name registrars have been determined to be current and reliable means by which Defendant Zhixian may be apprised of the pendency of this action.  Chanel respectfully submits that an order allowing service of process, and all subsequent pleadings and discovery, via e-mail in this case will benefit all parties and the Court by ensuring Defendant Zhixian receives immediate notice of the pendency of this action and allowing this action to move forward expeditiously.  Absent the ability to serve Defendant Zhixian by e-mail, Chanel will almost certainly be left without the ability to pursue a remedy.

## II.      STATEMENT OF FACTS

### A.      Defendant Is Engaged in Illegal Activities Within This District.

Defendant Zhixian operates the Internet websites existing under the Subject Domain Names.  Defendant Zhixian, through his Internet websites is illegally advertising, offering for sale and selling counterfeit and infringing products, including at least, handbags, wallets, shoes, boots, belts, scarves, swimwear, and jewelry, bearing trademarks which are exact copies of Chanel's registered trademarks identified in Paragraph 9 of the Complaint (the "Counterfeit Goods").  (See Relevant web pages from Defendant's Internet websites operating under the Subject Domain Names (the "Defendant's Websites") attached as Composite Exhibit "1" to the

Declaration of Stephen M. Gaffigan filed in support of Plaintiff's *Ex* Parte Application for Entry of a Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should Not Issue ("Gaffigan Decl. in support of *Ex Parte* Application for Entry of TRO").)[1] Defendant's Websites are visibly advertising and offering for sale his Counterfeit Goods within all Judicial Districts, including the Southern District of Florida.  Additionally, Defendant Zhixian has fraudulently registered many of the domain names at issue in this matter using names which incorporate Chanel's own name.  By doing so, Defendant Zhixian has created a false association between his counterfeit and infringing goods and websites, and Chanel.  Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause irreparable harm to Chanel.  Moreover, Defendant Zhixian's registrations of multiple domain names which incorporate a Chanel registered trademark constitutes cyberpiracy in violation of 15 U.S.C. § 1125(d).

To verify the counterfeit nature of Defendant Zhixian's products, Chanel's investigator, Jason Holmes ("Holmes"), purchased a pair Chanel branded shoes from the Internet website operating under the Subject Domain Name chaneltalk.com, which was shipped directly to his address in Wilton Manors, Florida.  (See Declaration of Jason Holmes in Support of Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Holmes Decl.") ¶ 4, filed herewith and Exhibit "1" attached thereto).  Upon purchasing the item from Defendant Zhixian, Holmes sent the webpage captures reflecting the Chanel branded shoes to Chanel, where they were examined by a Chanel

---

[1] On April 20, 2010, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should Not Issue and Memorandum of Law in Support Thereof ("*Ex Parte* Application for Entry of TRO"), together with the supporting exhibits and declarations, which are incorporated herein by reference. (e-docket 6.)

representative. (Id.)  Chanel's representative determined the Chanel branded shoes purchased from Defendant Zhixian via chaneltalk.com were non-genuine Chanel shoes. (Id.)

**B.      Defendant Has Purposefully Falsified His Public Physical Address Data But Has Provided Valid E-mail Addresses.**

According to regulations established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity which registers a domain name is required to provide complete and accurate registration information for the domain name.  (See ICANN Uniform Domain Name Dispute Resolution Policy ¶ 2 attached as Exhibit "3" to the Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Gaffigan Decl.))  As demonstrated below, Defendant Zhixian has ignored the applicable ICANN regulations and provided false physical address information to his domain name registrars in order to avoid liability for his criminal conduct.  However, out of necessity, Defendant Zhixian has provided at least two accurate contact e-mail addresses to his domain name registrars.  As a practical matter, a domain registrant generally must maintain accurate e-mail addresses where his registrar may communicate with him regarding issues related to the purchase, transfer, and maintenance of his domain name accounts.

Prior to filing the Complaint in this action, Chanel's counsel conducted WHOIS searches regarding the Subject Domain Names identifying the addresses Defendant Zhixian provided his Registrars.  (See Gaffigan Decl. ¶ 4; see also WHOIS domain registration reports regarding the Subject Domain Names attached as Composite Exhibit "2" to the Gaffigan Decl. in support of *Ex Parte* Application for Entry of TRO, e-docket 6-4.)  The contact data provided by Defendant

Zhixian for the Subject Domain Names identify his purported physical and e-mail addresses are

as follows:[2]

| Domain Name | WHOIS Registrant  Contact Information |
|---|---|
| chanel-belts.com | Address:     putian meiyuan<br>                    putian, Fujian, 351100 CN<br>Telephone: 1.15080185353<br>E-mail:      nashliu@gmail.com |
| chanel2u.com | Address:     no.8 facai road<br>                    beijing, beijing 100000 China<br>Telephone: 86.15986524158<br>E-mail:      bravopurchase@gmail.com |
| chanel4u.com | Address:     Guangzhou shi<br>                    guangzhou,  560000 China<br>Telephone: +86.13415133422<br>E-mail:      ivans@gmail.com |
| chanel-sandals.com | Address:     #74 Yanxi kai fa qu Huairou<br>                    Beijing, Beijing 101416 China<br>Telephone: +86.13813948273<br>E-mail:      root@chanel-sandals.com |
| chaneltalk.com | Address:     xueyuan road wenhai #132<br>                    putian, fujian 351100 China<br>Telephone: 86.11413213<br>E-mail:      root@chaneltalk.com |
| okchanel.com | Address:     #168 Zunyi Road<br>                    shanghai, shanghai 200000 China<br>Telephone: 86.151865421587<br>E-mail:      okchanel@gmail.com |
| chanelbikini.com | Protected Domain Services<br>Customer ID: NCR-1280101 |
| chanel-rings.com | Protected Domain Services<br>Customer ID: NCR-1233166 |
| chanel-scarf.com | Protected Domain Services<br>Customer ID: NCR-1203339 |
| chanelswimwear.com | Protected Domain Services<br>Customer ID: NCR-1280109 |
| brandshoesbar.com | Protected Domain Services<br>Customer ID: NCR-1095006 |

---

[2] The domain names brandshoesbar.com, chanelbikini.com, chanel-rings.com, chanel-scarf.com, and chanelswimwear.com are anonymously registered through a privacy service offered by Name.com, LLC, and thus, do not provide any physical contact information for Defendant.

5

Chanel's counsel requested Huang Yu Ting ("Ting"), a researcher in China, verify the accuracy of the physical contact addresses and research alternative addresses for Defendant Zhixian. Ting investigated all of the physical contact addresses provided by Defendant Zhixian for the Subject Domain Names, and determined each to be false, incomplete, and/or invalid addresses for service of process on Defendant Zhixian. (See Declaration of Huang Yu Ting in Support of Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(F)(3) ("Ting Decl.") ¶¶ 4, 6, 8, 10, 12, 14, filed herewith, outlining Ting's investigation and the specific basis for her determination that each of the physical contact addresses are false, incomplete, and/or invalid.)  Ting also attempted to contact Defendant Zhixian via the telephone numbers provided in the contact section of the WHOIS domain registration reports regarding the Subject Domain Names. However, all of Ting's attempts were unsuccessful as most of the telephone numbers are either invalid or disconnected, and Ting's calls to the remaining valid telephone numbers went unanswered. (See Ting Decl. ¶¶ 5, 7, 9, 11, 13, 15, outlining Ting's investigation of the telephone numbers provided in the contact section of the WHOIS domain registration reports regarding the Subject Domain Names.)

The evidence makes it clear that Defendant Zhixian intentionally falsified his physical address data in violation of ICANN's rules.  Accordingly, Ting and Holmes conducted an investigation of Defendant Zhixian and his operations in order to ascertain a physical address for service of process. (See Ting Decl. ¶ 16; Holmes Decl. ¶ 10.)  However, Ting and Holmes were unable to identify a valid physical address for service of process on Defendant Zhixian. (Id.) Thus, based on Defendant Zhixian's provision of invalid postal addresses and Chanel's inability

to find other physical addresses for him, Chanel cannot serve Defendant Zhixian by traditional means.

Despite falsifying his physical contact address data, Defendant Zhixian has provided at least two accurate contact e-mail addresses to his domain name Registrars for the Subject Domain Names.  Specifically, Defendant Zhixian identifies his contact e-mail addresses for the domain names chanel-belts.com and chanel2u.com as nashliu@gmail.com and bravopurchase@gmail.com , respectively. (See WHOIS domain registration reports regarding the Subject Domain Names attached as Composite Exhibit "2" to the Gaffigan Decl. in support of *Ex Parte* Application for Entry of TRO, e-docket 6-4.)  On April 16, 2010, Holmes sent pretextual e-mails to Defendant Zhixian via the e-mail addresses nashliu@gmail.com and bravopurchase@gmail.com . (See Holmes Decl. ¶¶ 9-10 and Composite Exhibits "4" and "5" attached thereto.)  The e-mails were not bounced back nor returned as "undeliverable," thereby demonstrating the e-mails were delivered to Defendant Zhixian and the e-mail addresses are valid and operational. (Id.)  See Popular Enterprises, LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (finding that an e-mail sent to an e-mail address supplied by defendant to its domain name registrar did not bounce back and presumably reached defendant.)  Moreover, Holmes received verified Return Receipts for the e-mails sent to Defendant Zhixian via nashliu@gmail.com and bravopurchase@gmail.com , verifying the e-mails were received on April 16, 2010 at 22:24:01 GMT and 22:24:52 GMT, respectively, thereby further and conclusively demonstrating the e-mails were delivered to Defendant Zhixian and confirming the reliability of the e-mail addresses. (See Holmes Decl. ¶¶ 9-10 and Composite Exhibits "4" and "5" attached thereto.)

Additionally, Holmes received an e-mail regarding his purchase of the Chanel branded shoes from the chanltalk.com website from Defendant Zhixian's customer service e-mail address, customerservice@payingsupport.com. (See Holmes Decl. ¶ 5 and Composite Exhibit "2" attached thereto.)  To confirm the reliability of the customer service e-mail address, on April 21, 2010, Holmes sent a pretextual e-mail to Defendant Zhixian via customerservice@payingsupport.com. (See Holmes Decl. ¶ 6 and Exhibit "3" attached thereto.) The e-mail was not bounced back nor returned as "undeliverable" thereby demonstrating the e-mail was delivered to Defendant Zhixian and the e-mail address is valid and operational. (Id.) See Popular Enterprises, LLC, 225 F.R.D. at 562.  Moreover, Holmes received a verified Return Receipt for the e-mail sent to Defendant Zhixian via customerservice@payingsupport.com, verifying the e-mail was received on April 21, 2010 at 21:52:56 GMT, thereby further and conclusively demonstrating the e-mail was delivered to Defendant Zhixian and confirming the customer service e-mail address is also a reliable means of providing Defendant Zhixian notice of the action. (See Holmes Decl. ¶ 6 and Exhibit "3" attached thereto.)

**C.      Defendant Relies Solely on Electronic Communications.**

Defendant Zhixian has structured his websites so that the sole means for customers to purchase the Counterfeit Goods at issue is by placing an order over the Internet.  Defendant Zhixian takes and confirms orders solely through his websites, and he answer inquiries and provides shipping notices only via e-mail. (See Holmes Decl. ¶ 5 and Composite Exhibit "2" attached thereto.)   Furthermore, Defendant Zhixian instruct customers to contact him via e-mail with any questions or concerns. (Id.; see also Defendant's Websites attached as Composite Exhibit "1" to the Gaffigan Decl. in support of *Ex Parte* Application for Entry of TRO, e-docket 6-4.)  Indeed, the contact information listed on his websites operating under the Subject Domain Names list only e-mail, and no other means to contact Defendant Zhixian. (Id.)   Defendant

Zhixian does not provide any valid physical addresses or phone numbers on his websites where customers can contact him or locate his businesses. (Id.)

Additionally, as discussed above, Holmes made a covert purchase of Chanel branded shoes from Defendant Zhixian via one of his websites, chaneltalk.com. (See Holmes Decl. ¶ 4 and Composite Exhibit "1" attached thereto.)   Holmes' purchase was processed entirely online, which included providing shipping and billing information, payment, and confirmation of his order. (Id.)  Moreover, Holmes was able to communicate with Defendant Zhixian only electronically in connection with his purchase of the Chanel branded shoes from the chaneltalk.com website. (Id.)

## III.   ARGUMENT

### A.   The Court may Authorize Service via Electronic Mail Pursuant to Federal Rule of Civil Procedure 4(f)(3).

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process to be made on an individual in a foreign country by any means not prohibited by international agreement as the Court directs.  Prewitt Enterprises, Inc. v. The Organization of Petroleum Exporting Countries, 353 F.3d 916, 923 (11th Cir. 2003); Rio Props. Inc., v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002).  The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the District Court.  See Prewitt Enterprises, 353 F.3d at 921; Rio Props., 284 F.3d at 1116.  Rule 4 does not require that a party attempt service of process by those methods enumerated in Rule 4(f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under Rule 4(f)(3).  Rio Props., 284 F.3d at 1114-15; see also Brookshire Brothers, Ltd. v. Chiquita Brands International, 2007 WL 1577771 (S.D. Fla. 2007).  In

9

Brookshire, the Honorable Marcia G. Cooke allowed substitute service on a party's attorney

pursuant to Rule 4 (f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each
> subsection is separated from the one previous merely by the simple conjunction
> 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s
> other subsections; it stands independently, on equal footing. Moreover, no
> language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule
> 4(f)(3) indicates no qualifiers or limitations which indicate its availability only
> after attempting service of process by other means.

Brookshire, 2007 WL 1577771 (S.D. Fla. 2007) at *2. Judge Cooke went on to hold that "[t]he

invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief." (citing Rio

Props., 284 F.3d 1007, 1015.)

Additionally, the method of service of process "must also comport with constitutional

notions of due process." Rio Props. 284 F.3d 1007, 1016; see also Prewitt Enterprises, 353 F.3d

at 927. "To meet this requirement, the method of service crafted by the district court must be

'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections.'" Rio Props. at 1016

(citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Ninth

Circuit in Rio Props. held, "without hesitation," that e-mail service of an online business

defendant "was constitutionally acceptable." Rio Props., 284 F.3d at 1017.

Here, service on Defendant Zhixian by e-mail will satisfy due process by apprising him

of the action and giving him the opportunity to answer Chanel's claims. As set forth in the

Declaration of Ting and Holmes, Defendant Zhixian has secreted his physical locations in a

manner that violates the terms of his ICANN domain registration agreement and prohibits

Chanel from physically serving process on him. In fact, the only way for Chanel to provide

Defendant Zhixian with notice of this action is through his e-mail addresses, which Chanel has

10

recently verified as the sole reliable means of communicating with Defendant Zhixian. (See Holmes Decl. ¶¶ 5-6 and 8-9.) E-mail service on an online business defendant is appropriate and constitutionally acceptable in a case such as this when the plaintiff is unable to personally serve the defendant at a physical address and has proven that e-mail is the most effective means of providing the defendant notice of the action. See Rio Properties, 284 F.3d at 1017 (concluding "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]."); see also Popular Enterprises, 225 F.R.D. at 562 ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases. Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts.") (citation omitted). The Courts in both cases determined e-mail service to be appropriate in part because, as in this case, the defendants conducted their business over the Internet, used e-mail regularly in their business, and encouraged parties to contact them via e-mail.

Likewise, in cases factually similar to this one, a number of Courts have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." Popular Enterprises LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (allowing e-mail service).[3] Chanel submits that allowing e-mail service

---

[3] See also Chanel, Inc. v. Jin, 0:10-cv-60070-JIC (S.D. Fla. April 12, 2010) (Order allowing e-mail service); Chanel, Inc. v. Does 1-10, No. 09-cv-23618-JAL (S.D. Fla. April 30, 2010) (same); Chanel, Inc. v. Does 1-10, No. 1:09-cv-22943-JAL (S.D. Fla. Feb. 25, 2010) (same); Chanel v. Catton, Case No. 09-CV-20634-UU (S.D. Fla. August 24, 2009) (Order allowing e-

in the present case is appropriate and comports with constitutional notions of due process, particularly given Defendant Zhixian decision to conduct his illegal Internet based businesses anonymously.

### B.  E-mail Service Is Not Prohibited by International Agreement.

As noted above, prior to filing this Application, Chanel diligently investigated Defendant Zhixian addresses, without success.  (See Ting Declaration ¶ 4-16; Holmes Decl. ¶ 10.)  Thus, as a result of Defendant Zhixian own efforts to conceal his location, Chanel is unable to determine his physical whereabouts.  However, Chanel has good cause to suspect Defendant Zhixian is a resident of the People's Republic of China.  Specifically, the origin of the April 19, 2010 e-mail Holmes received regarding his purchase from Defendant Zhixian's website chaneltalk.com was traced to a computer terminal located in China. (See Holmes Decl. ¶ 5 and Composite Exhibit "2" attached thereto.) Additionally, the payee for the Chanel branded shoes Holmes purchased via the chaneltalk.com website was identified as "Everywhere Buxx Chinacraftworks Putian

mail service and service upon U.S. counsel); MPS IP Servs., Corp. v. Modis Commc'ns., Inc., Case No. 3:06-cv-270-J-20HTS (M.D. Fla. May 30, 2006) (allowing plaintiffs to effect service on Canadian citizen via e-mail, facsimile and regular mail); Williams-Sonoma, Inc. v. Friendfinder, Inc., No. C 06-6572, 2007 WL 4973848 (N.D. Cal. Dec. 6, 2007) (allowing e-mail service); Philip Morris USA Inc. v. Veles Ltd., No. 06 cv 2988, 2007 WL 725412 (S.D.N.Y. March 12, 2007) (allowing e-mail service); Williams v. Advertising Sex LLC, 231 F.R.D. 483 (N.D. West Va. 2005) (same); MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., No. 08 cv 2593, 2008 WL 5100414 (N.D. Ill.  Dec. 1, 2008) (holding e-mail and facsimile service appropriate); Chanel, Inc. v. Xuhui, 10-cv-02040-tmp (W.D. Tenn. April 19, 2010) (same); Chanel v. Xuelian, 2: 10-cv-02022-dkv (C.D. Cal. March 3, 2010) (same); Chanel, Inc. v. Drezner, Case No. 2:10-cv-02022-dkv (W.D. Tenn. March 3, 2010) (same); Chanel, Inc. v. Xu, 2:09-cv-02610-SHM-cgc (W.D. Tenn. Jan. 27, 2010) (same); Chanel v. Weissman, 2:09-cv-01251-JHN-FMO (C.D. Cal. Jan. 27, 2010) (same); Gucci America, Inc. v. Jing, Case No. C-09-05809-JF (N.D. Cal. January 4, 2010) (Order allowing e-mail service); Chanel, Inc. v. Guodong, Case No. C-09-05593-JW (N.D. Cal. December 04, 2009) (same); Chanel, Inc. v. Smith, No. 2:09-cv-02586-SHM-cgc (W.D. Tenn. Nov. 23, 2009) (same); Chanel, Inc. v. Paley, Case No. C-09-04979-MHP (N.D. Cal. October 26, 2009) (same); Chanel, Inc. v. Dodd, Case No. C-09-3958-VRW (N.D. Cal. September 15, 2009) (same); Chanel, Inc. v. Zhang, Case No. C-09-1977 MMC (N.D. Cal. August 27, 2009) (same); Chanel, Inc. v. Bosini, Case No. C-09-1972 MHP (N.D. Cal. August 12, 2009) (same); Mainstream Media, EC v. Peter Riven, Case No. 08-3623 PJH (N.D. Cal. Dec. 18, 2008).

CN," and the shoes were shipped from China. (See Holmes Decl. ¶¶ 5-6 and Exhibits "2" and "3" attached thereto.)

The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). (See Gaffigan Decl. ¶ 5 and Composite Exhibit "1" attached thereto, Hague Convention and list of signatory Members.) "[C]ompliance with the Convention is mandatory in all cases to which it applies [. . . .]" Volkswagonwerk AG v. Schlunk, 486 U.S. 694, 705, 108 S. Ct. 2104, 100 L. E.D.2d 722 (1988).  However, according to Article 1 of the Convention, "[the] convention shall not apply where the address of the person to be served with the document is not known."  20 U.S.T. 361 (1969).  See also Popular Enter., 225 F.R.D. at 562; Philip Morris USA Inc. v. Veles Ltd., No. 06 Civ. 2988, 2007 WL 725412, at *2 (S.D.N.Y. March 12, 2007) (e-mail service authorized and the Hague Convention did not apply because, despite physical "addresses" having been provided to defendants' registrars, the actual addresses could not be confirmed as valid); BP Products North America, Inc. v. Dagra, 236 F.R.D. 270, 271 (E.D. Va. 2006) (authorizing service by publication on Pakistani defendant, despite Pakistan's status as Hague Convention member, because "Hague Convention does not apply in cases where the address of the foreign party to be served is unknown").  As the address of Defendant Zhixian is unknown, Chanel respectfully submits the Convention does not apply in this case.

Moreover, though it does not expressly authorize e-mail service, the Hague Convention does not preclude e-mail service, and thus, is no bar to court-directed e-mail service under Rule 4(f)(3).  In fact, U.S. Courts have routinely authorized international mail and e-mail service notwithstanding the applicability of the Hague Convention.  See, e.g., Brockmeyer v. May, 383

13

F.3d 798, 800 (9th Cir. 2004) ("We join the Second Circuit in concluding that the Convention ... does not prohibit service of process by international mail"); Nanya Technology Corp., 2007 WL 269087 (D. Guam January 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); Popular Enterprises, 225 F.R.D. at 562; MPS IP Services Corp. v. Modis Communications, Inc., 2007 WL 723841 (Hague Convention, which Canada is a signatory, did not prohibit e-mail service upon Canadian defendants).

### C.     E-mail Service Is Not Prohibited by International Law.

Plaintiff's counsel has researched whether the issuance of the requested service order pursuant to Rule 4(f)(3) is contrary to or likely to offend the law of the People's Republic of China. (See Gaffigan Decl. ¶ 6.)  The law of the People's Republic of China does not appear to prohibit the service of process by e-mail and allows for alternate service means in certain circumstances.  (See Gaffigan Decl. ¶ 6 and Exhibit "2" attached thereto, "Civil Procedure Law of the People's Republic of China".)  For example, Article 80 of the law specifically provides that "[i]f direct service of a litigation document proves difficult, […] it may be served by post […]." (See Exhibit "2" attached to the Gaffigan Decl.) Additionally, Article 84 of the law provides that if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law, a document shall be served by public announcement. (Id.)  Hence, Chanel submits that allowing service of process upon Defendant Zhixian in this case via e-mail would be consistent with and not prohibited by the Civil Procedure Law of the PRC.

### IV.     CONCLUSION

For the foregoing reasons, Chanel respectfully requests this Court grant the present application to serve the Summons and Complaint and all subsequent pleadings and discovery

14

upon Defendant Liu Zhixian by e-mail at the e-mail addresses nashliu@gmail.com;

bravopurchase@gmail.com; and customerservice@payingsupport.com.

Dated:  April 22, 2010                         Respectfully submitted,

                                               STEPHEN M. GAFFIGAN, P.A.


                                               By:  _____s:/smgaffigan/_____
                                                    Stephen M. Gaffigan (Fla. Bar No. 025844)
                                                    Virgilio Gigante (Fla. Bar No. 082635)
                                                    401 East Las Olas Blvd., #130-453
                                                    Ft. Lauderdale, Florida 33301
                                                    Telephone: (954) 767-4819
                                                    Facsimile: (954) 767-4821
                                                    E-mail: Stephen@smgpa.net
                                                    E-mail: Leo@smgpa.net

                                                    Attorneys for Plaintiff Chanel, Inc.

15